IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| US AIRWAYS, INC. in its capacity as Fiduciary and Plan Administrators of the US Airways, Inc. Employee Benefits Plan,<br><br>        Plaintiff,<br><br>        vs.<br><br>JAMES E. MCCUTCHEN and ROSEN, LOUIK & PERRY, P.C.,<br><br>        Defendants. | 2:08cv1593<br>**Electronic Filing** |

**MEMORANDUM OPINION**

August 30, 2010

**I.   INTRODUCTION**

Plaintiff, US Airways, Inc. ("US Airways"), in its capacity as fiduciary and administrator of the US Airways, Inc. Health Benefit Plan (the "Plan"), filed this action against Defendants, James E. McCutchen ("McCutchen") and the law firm of Rosen, Louik and Perry, PC ("RL&P") seeking equitable relief under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U. S. C. § 1132(a)(3), to enforce certain subrogation/reimbursement provisions of the Plan. US Airways has filed a motion for summary judgment, Defendants have responded and the motion is now before the Court.

**II.   STATEMENT OF THE CASE**

On January 24, 2007, McCutchen sustained multiple injuries in an automobile accident (the "Accident"). Plaintiff's Concise Statement of Undisputed Material Facts ("Pl. SUMF") ¶ 4; Affidavit of Jon Perry ("Perry Aff.") ¶¶ 2 & 3. At the time of the accident, McCutchen was an employee of US Airways, and allegedly a beneficiary under the Plan which provided medical expense benefits to its participants. Pl. SUMF ¶ 3. The Plan paid accident-related medical expenses on behalf of McCutchen in the amount of $66,865.82. Pl. SUMF ¶ 5.

Attorney Jon R. Perry and the law firm of Rosen, Louik and Perry, PC were retained by the McCutchens to pursue claims related to the accident. Pl. SUMF ¶ 6; Perry Aff. ¶ 2. In June of 2007, Perry and RL&P were notified by Ingenix Subrogation Services ("Ingenix") that it had been retained by the Plan to recover medical benefits paid by the Plan on behalf of McCutchen for treatment of injuries arising out of the Accident. Pl. SUMF ¶ 7; Perry Aff. Exhibit 1. McCutchen denied the Plan's right to reimbursement out of any settlement proceeds. Pl. SUMF ¶ 9. McCutchen's claims were eventually settled for $10,000.00 from the driver whose vehicle struck McCutchen's, and $100,000.00 in underinsured motorist benefits (the "UIM Claim"), the limits of the policy, under McCutchen's automobile insurance policy. Perry Aff. ¶¶ 6, 7, 10 &11.

RL&P deducted its fee and a proportionate share of the expenses from the total settlement and placed $41,500.00 in its trust account for any lien against McCutchen found to be valid. Perry Aff. Exhibit 21; Pl. SUMF ¶¶ 13 & 14. The Plan is seeking the $41,500.00 held by RL & P, as well as $25,365.82 allegedly in the possession of McCutchen. Defendants contend that the Plan does not have an enforceable lien in this matter.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in

2

favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

## IV.  DISCUSSION

ERISA expressly authorizes fiduciaries of ERISA-governed plans to sue to seek redress of violations or enforce provisions of ERISA or of particular plans. 29 U.S.C. § 1132(a)(3). Further, where an ERISA-governed plan seeks to impose a constructive trust or equitable lien on "particular funds or property in the defendant's possession," such plan is seeking equitable restitutionary relief as contemplated by ERISA under § 502(a)(3). *Sereboff v. Mid-Atlantic Medical Services*, 547 U.S. 356, 361-362 (2006). Here, US Airways is seeking to enforce certain subrogation/reimbursement provisions of the Plan.

As an initial matter, Defendants argue that there is an issue of fact regarding whether McCutchen was actually covered by the US Airways, Inc. Health Benefit Plan. The Court finds such contention to be without merit. There is no dispute that at the time of the accident,

McCutchen was an employee of US Airways. US Airways has explained the confusion regarding McCutchen's coverage which occurred in an out-of-court representation early in this litigation. *See* U.S Airways Appendix, Ex. 1, Affidavit of Kimie Shanahan[1] ("Shanahan Aff.") ¶¶ 4 & 5. Moreover, Defendants have offered no material evidence to the contrary. Because the Court finds that the US Airways, Inc. Health Benefit Plan is the applicable ERISA plan in this matter, the Court must also find that the Plan is self funded. *See* Shanahan Aff. ¶ 3; Exhibit 1 to Shanahan Affidavit, p. 93.

      A.      <u>Review of Self-Funded ERISA Plan</u>

The United States Supreme Court has directed courts to review a self-funded ERISA plan's interpretation of its contracts governing benefit payments under an arbitrary and capricious standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989). Applying general principles of trust law, the Court further stated, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Id.* at 115. The Third Circuit has found that an arrangement in which an employer establishes a plan, ensures its liquidity, and creates an internal benefits committee vested with the discretion to interpret the plan's terms and administer benefits, does not constitute the kind of conflict mentioned by the Court in *Firestone*. *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 383 (3d Cir. 2000). Regarding such self-funded ERISA plans, the court stated:

> While . . . there might be a risk of opportunism [in permitting a self-funded Plan to interpret the provisions of its coverage] . . . this alone does not constitute evidence of a conflict of interest, in part because the employer "has incentives to avoid the loss of morale and higher wage demands that could result from denials of benefits."

*Id.* at 386 (quoting *Nazay v. Miller*, 949 F.2d 1323 (3d Cir. 1991)).

In *Bill Gray Enters. v. Gourley*, 248 F.3d 206 (3d Cir. 2001), a case factually similar to

---

[1] Shanahan is employed by U.S. Airways as Manager, Benefits Services, and has been in such position since June of 2005. Shanahan Aff. ¶¶ 1 & 2.

4

the instant case, the Court of Appeals for the Third Circuit reviewed the plan at issue under the arbitrary and capricious standard, stating:

> Under the Plan document, Bill Gray, as the Plan fiduciary and administrator, was given the discretionary authority to interpret the terms of the Plan document. By instituting litigation against [Defendants], Bill Gray interpreted the Plan document to require reimbursement from payments received under an uninsured motorist benefits policy. Accordingly, we review the . . . interpretation of the Plan document under an arbitrary and capricious standard.

*Bill Gray Enters. v. Gourley*, 248 F.3d at 217-218(citing *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d at 378). Under the "arbitrary and capricious" standard, the Court may only overturn the Claim Administrator's decisions if it is "clearly not supported by the evidence in the record or the administrator has failed to comply with procedures required by the plan." *Vitale v. Latrobe Area Hosp*, 420 F.3d 278, 281-82 (2005). The Court may not substitute its own judgment as to the interpretation of the plan where this heightened standard is deemed appropriate. *Moats v. United Mine Workers of America Health and Retirement Funds*, 981 F.2d 685, 687-88 (3d Cir. 1992).

US Airways, as Plan administrator, is solely responsible for the administration of the Plan, and has:

> sole discretion to determine all matters relating to eligibility, coverage and benefits under the Plan, including entitlement to benefits. The Plan administrator will also have the sole discretion to determine all matters relating to interpretation and operation of the Plan. Any determination by the Plan administrator, or its authorized delegate, shall be final and binding.

Exhibit 1 to Shanahan Affidavit, p. 91. Like the administrator in *Bill Gray*, US Airways has interpreted the Plan document to require reimbursement from payments received by McCutchen under his uninsured motorist benefits policy and has instituted this litigation to recover medical expenses paid by the Plan. The Court will review the Plan under the arbitrary and capricious standard[2].

In reviewing US Airways' interpretation of the Plan, the Court must first determine

---

[2] The Defendants have not argued bias or conflict of interest on the part of US Airways.

whether the terms of the plan document are ambiguous. *Bill Gray Enters. v. Gourley*, 248 F.3d at 218; *In re Unisys Corp. Long-Term Disability Plan ERISA Litig.*, 97 F.3d 710, 715-716 (3d Cir. 1996). The determination of whether terms in an ERISA plan document are ambiguous is a question of law. *Bill Gray Enters. v. Gourley*, 248 F.3d at 218. Terms are considered ambiguous if they are subject to reasonable alternative interpretations. *Id.*; *Taylor v. Cont'l Group Change in Control Severance Pay Plan*, 933 F.2d 1227, 1232 (3d Cir. 1991). In determining whether terms of the Plan are ambiguous, the Court must look to the plain language of the documents. *Id.*; *see Henglein v. Colt Indus. Operating Corp. Informal Plan*, 91 Fed. Appx. 762, 766 (3d Cir. 2004).

If the terms of the Plan at issue are unambiguous, then any actions taken by the plan administrator inconsistent with the terms of the document are arbitrary. *Bill Gray Enters. v. Gourley*, 248 F.3d at 218. Actions reasonably consistent with unambiguous plan language, however, are not arbitrary. *Id.* If the Court determines the terms of the Plan are ambiguous, we must analyze whether US Airways' interpretation of the document was reasonable. *Id.* (citing *Spacek v. Maritime Ass'n ILA Pension Plan*, 134 F.3d 283, 292 (5th Cir. 1998)).

Under the Plan, beneficiaries are subject to subrogation as follows:

> If the Plan pays benefits for any claim you incur as the result of negligence, willful misconduct, or other actions of a third party, the Plan will be subrogated to all your rights of recovery. You will be required to reimburse the Plan for amounts paid for claims out of any monies recovered from a third party, including, but not limited to, your own insurance company as the result of judgment, settlement, or otherwise. In addition, you will be required to assist the administrator of the Plan in enforcing these rights and may not negotiate any agreements with a third party that would undermine the subrogation rights of the Plan.

Exhibit 1 to Shanahan Affidavit, p. 72. Defendants argue that, in the area of personal injury law, the term "third party" is universally accepted as referring to the at-fault tortfeasor. Defendants argue, therefore, that the language "[y]ou will be required to reimburse the Plan for amounts paid for claims out of any monies recovered from a third party, including, but not limited to, your own insurance company . . ." creates an ambiguity because one "cannot recover money from the third party from one's own insurance company."

In *Bill Gray*, the Third Circuit was presented with the same issue and found:

> The term "third party" is not ambiguous because the term clearly refers to any person or entity other than the Plan and the covered individual. "Third party" broadly refers to a variety of individuals and entities who are not "a party to a lawsuit, agreement, or other transaction." *Black's Law Dictionary* 1489 (7th ed. 1999). As the District Court noted, the term third party "in common parlance refers to a person or entity not an initial party to a suit or transaction who may have rights or obligations therein." *Bill Gray Enter., Inc.*, slip op. at *15. While this provision contemplates broad rights to reimbursement, we do not believe this translates into ambiguity.

*Bill Gray Enters. v. Gourley*, 248 F.3d at 220. Similar to the language in the US Airways' Plan, the Plan document in *Bill Gray* explicitly provided that reimbursement also applied "when a Covered Person recovers under an uninsured or underinsured motorist plan . . ." *Id.* Based upon that language, the court found that a "reasonable plan participant . . . would understand the Plan document clearly mandates any recoveries from an uninsured motorist plan are subject to reimbursement." *Id.*

Based on the above, this Court finds that the term "third party" as it is used in the passage related to subrogation and reimbursement is clear and unambiguous. The Plan document clearly requires reimbursement by McCutchen of monies recovered including the UIM benefits paid by his insurance company. The Court finds that the interpretation on the Plan document was not arbitrary and capricious, and the Plan is, therefore, entitled to reimbursement from the monies McCutchen received in settlement of his tort claims including the uninsured motorist benefits received from his insurance company.[3]

---

[3] Similarly, in *Sereboff,* the beneficiaries were covered by a health insurance plan that contained an "Acts of Third Parties" provision, which required a beneficiary who received benefits under the plan for injuries caused by a third party to reimburse the fiduciary for those benefits from all recoveries from the third party. *Sereboff v. Mid-Atlantic Medical Services*, 547 U.S. at 359. The beneficiaries were injured in an automobile accident, and the plan paid the medical expenses. *Id.* at 360. The fiduciary asserted a lien on the anticipated proceeds from the beneficiaries' lawsuit against the third parties responsible for their injuries. *Id.* After the lawsuit was settled, the fiduciary sought reimbursement of medical expenses paid by the (cont.)
(Cont.) ERISA plan. *Id.* The Court determined that ERISA § 502(a)(3), 29 U.S.C.S. §

Defendants further argue that: (1) Plaintiff is not entitled to recover because McCutchen was not fully compensated for his injuries; (2) any recovery by the Plaintiff must be reduced by the proportionate share of attorney fees; and (3) if Plaintiff is entitled to any recovery, such recovery is limited to the $41,500.00 escrowed in RL&P's trust account[4].

B. The Make Whole Doctrine

Attorney Perry, McCutchen's counsel in the underlying personal injury case, opined that the claims of Mr. And Mrs. McCutchen had a combined value of between $1 million and $1.75 million. It is undisputed that the McCutchens' total recovery was limited to $110,000.00. Defendants argue therefore, that allowing Plaintiff to recover any amount would not be appropriate equitable relief considering that the make whole doctrine is a part of the federal common law.

This argument has been rejected by the Third Circuit[5] in *Bill Gray Enters. v. Gourley*, *supra*. In rejecting the application of the make whole doctrine, the court stated: "importing federal common law doctrines to ERISA plan interpretation is generally inappropriate, particularly when the terms of an ERISA plan are clear and unambiguous." *Id.* at 220 n. 13(citing *Bollman Hat Co. v. Root*, 112 F.3d 113, 117 n.3 (3d Cir.), *cert. denied*, 522 U.S. 952 (1997); *Ryan by Capria-Ryan v. Fed. Express Corp.*, 78 F.3d 123 (3d Cir. 1996)). Because the Plan in Bill Gray unambiguously required reimbursement with the proceeds from the defendant's uninsured motorist's benefits, the court declined to extend the make whole remedy. *Id.*

This Court finds no reason to deviate from the established precedent of the Third Circuit.

---

1132(a)(3), authorized recovery in these circumstances. *Id.* at 367-369.

[4] The Defendants have also argued that US Airways has waived its right to reimbursement, that the "unclean hands" doctrine prevents its recovery, and that recovery must be reduced by the proportion of the amount recovered to the alleged value of McCutchen's personal injury claim. The Court finds such arguments to be without merit.

[5] Defendants assert that Sixth Circuit law should govern this matter because McCutchen is a resident of Ohio. Such assertion, however, has no basis in law and is rejected by this Court.

8

We have found the language of the Plan to be clear and unambiguous, requiring McCutchen "to reimburse the Plan for amounts paid for claims out of **any monies recovered**." Exhibit 1 to Shanahan Affidavit, p. 72 (emphasis added). The make whole doctrine, therefore, is inapplicable in the face the Plan's clear reference to "all rights of recovery" and to "any monies recovered" set forth in the subrogation clause of the ERISA Plan document.

    C.    <u>Reduction of Recovery - Attorney Fees</u>

Defendants argue that any recovery by the Plaintiff must be reduced by the proportionate share of attorney fees. The parties agree that the language of the US Airways plan is silent on the issue of attorney fees. Defendants contend that if US Airways wanted to exclude the deduction of attorney fees from its recovery/reimbursement, it could have do so.

A plan or agreement, however, need not specifically address attorney's fees in order to unambiguously require full reimbursement. *See Bollman Hat Co. v. Root*, 112 F.3d at 117; *see also Ryan by Capria-Ryan v. Federal Express Corp.*, 78 F.3d at 127-128. The ERISA plan in *Ryan* required "100% reimbursement for any plan benefits paid." *Ryan by Capria-Ryan v. Federal Express Corp.*, 78 F.3d at 125. The court held the language was unambiguous and required complete reimbursement of all benefits paid, without a deduction for attorney's fees. The court determined that, because the plan was clear, there was no unjust enrichment[6] or windfall for the employer by completely reimbursing it **even though the plaintiff's own attorney had borne the burden and expense of obtaining the funds from the third-party**. *Id.* at 127-28 (emphasis added).

In *Bollman Hat*, the ERISA plan mandated reimbursement "up to the amount of such benefits paid" of "any payments" made under the plan. *Bollman Hat Co. v. Root*, 112 F.3d at

---

[6] The court rejected the unjust enrichment argument stating: "Enrichment is not 'unjust' where it is allowed by the express terms of the . . . plan. . . . it would be inequitable to permit the Ryans to partake of the benefits of the Plan and then, after they had received a substantial settlement, invoke common law principles to establish a legal justification for their refusal to satisfy their end of the bargain." *Ryan by Capria-Ryan v. Federal Express Corp.*, 78 F.3d at 127-128.

9

114. The court held that there was "no distinction" between that language and the *Ryan* plan language; the subrogation clauses were "materially identical," and plaintiff had no right to deduct his attorney's fees from the amount due his employer under the plan. *Id.*

The subrogation provision in the Plan at issue explicitly states: "[i]f the Plan pays benefits for any claim you incur as the result of negligence, willful misconduct, or other actions of a third party, the Plan will be subrogated to all your rights of recovery." The Plan requires reimbursement "for amounts paid for claims out of any monies recovered." The Plan's use of modifying terms such as "pays benefits for any claim," "subrogated to all your rights of recovery" and "any monies recovered" are similar to the terms used in *Bollman Hat*, which mandated reimbursement "up to the amount of such benefits paid" of "any payments", and in *Ryan*, requiring "100% reimbursement." The US Airways Plan is unambiguous and requires reimbursement of any payments made by the Plan to the participant and clearly provides for subrogation to all of McCutchen's rights of recovery. Third Circuit precedent does not permit federal common law to override a subrogation provision in an ERISA-regulated plan. US Airways, therefore, is entitled to full reimbursement of benefits paid under the Plan without reduction for the proportionate share of attorneys' fees.

D. <u>Recovery Limited to Amount Escrowed</u>

Defendants argue that to maintain its equitable nature, US Airways' reimbursement claim must seek a specifically identifiable and non-dissipated fund, specifically the $41,500.00 set aside in the RL&P trust account. US Airways contends that the "specifically identifiable" fund consists of the $100,000.00 from the UIM Claim and the $10,000.00 from the personal injury lawsuit. Any disbursement of the funds in derogation of the Plan, it argues, does not render the relief sought any less equitable.

The Supreme Court has delineated what forms of equitable restitution are available under § 502(a)(3), distinguishing permissible forms of equitable restitution such as employment of a constructive trust or of an equitable lien from forms of legal restitution. *See Great-West Life &*

*Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)). Specifically, the Court stated: "[A] plaintiff [may] seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213. In *Sereboff v. MidAtlantic Med. Servs., Inc.*, the Court characterized MidAtlantic's relief as equitable stating:

> the "Acts of Third Parties" provision in the Sereboffs' plan specifically identified a particular fund, distinct from the Sereboffs' general assets–"[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)"--and a particular share of that fund to which Mid Atlantic was entitled–"that portion of the total recovery which is due [Mid Atlantic] for benefits paid." . . . . [T]herefore, Mid Atlantic could rely on a "familiar rul[e] of equity" to collect for the medical bills it had paid on the Sereboffs' behalf. This rule allowed them to "follow" a portion of the recovery "into the [Sereboffs'] hands" "as soon as [the settlement fund] was identified," and impose on that portion a constructive trust or equitable lien.

*Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. at 364. Moreover, the Court held that there was no strict tracing requirement for equitable liens by agreement. *Id.* at 365. "What is required, however, is that the agreement specifically identify a particular fund -- distinct from the defendant's general assets - and a particular share of that fund to which the plan was entitled. *Gilchrest v. Unum Life Ins. Co. of Am.*, 255 F. App'x 38, 45 (6th Cir. 2007) (unpublished)(citing *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. at 364).

Here, US Airways seeks the restoration of particular funds, the lawsuit settlement and UIM benefits, as distinct from McCutchen's general assets, traceable to the Plan and subject to an equitable lien for the benefit of the Plan. Therefore, even if the monies paid to McCutcheon are not specifically traceable to McCutchen's current assets because of commingling or dissipation, such monies remain subject to the Plan's equitable lien. *See e.g. Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 621 (7th Cir. 2008) (allowing a claim under "29 U.S.C. § 1132(a)(3) even if the benefits it paid [the beneficiary] are not specifically traceable to [the beneficiary's] current assets because of commingling or dissipation."); *Bombardier Aerospace*

11

*Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 350, 362 (5th Cir. 2003) (allowing an ERISA plan to recover the settlement proceeds that the plan beneficiary's law firm had deposited into its trust account). US Airways, therefore, has a claim for equitable relief over the "specifically identifiable" fund consisting of the $100,000.00 from the UIM Claim and the $10,000.00 from the personal injury settlement.

V.  CONCLUSION

Based on the foregoing, the Court will grant Plaintiff's motion for summary judgment finding that Plaintiff is entitled to an equitable lien by agreement or constructive trust over $66,865.82, consisting of medical benefits paid to McCutchen by the US Airways, Inc. Employee Benefits Plan, out of funds McCutchen recovered from settlements relating to his January 24, 2007 automobile accident. An appropriate order follows.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc: Shannon H. Paliotta, Esquire
Littler Mendelson
625 Liberty Avenue
26th Floor
Pittsburgh, PA 15222

Noah Lipschultz, Esquire
Littler Mendelson
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Jon R. Perry, Esquire
Rosen, Louik & Perry
Suite 200
The Frick Building
437 Grant Street
Pittsburgh, PA 15219