**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **US AIRWAYS, INC**.  in its capacity as | ) | |
| Fiduciary and Plan Administrators | ) | |
| of the US Airways, Inc. Employee | ) | |
| Benefits Plan, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:08cv1593 |
| | ) | **Electronic Filing** |
| **JANET MCCUTCHEN**, Executrix of the | ) | |
| Estate of James E. McCutchen, and | ) | |
| **ROSEN, LOUIK & PERRY, P.C**., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

March 16, 2016

I.    **INTRODUCTION**

Plaintiff, US Airways, Inc. ("US Airways"), filed this action in its capacity as fiduciary

and administrator of the US Airways, Inc. Health Benefit Plan (the "Plan"), against Defendants,

James E. McCutchen ("McCutchen") and the law firm of Rosen, Louik and Perry, PC

("RL&P")(collectively "Defendants"), seeking equitable relief under Section 502(a)(3) of the

Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U. S. C. §

1132(a)(3), to enforce certain subrogation/reimbursement provisions of the Plan. This Court,

based on the provisions of the Summary Plan Description ("SPD"), granted summary judgment

in favor of US Airways.  The Third Circuit vacated this Court's order and remanded for

consideration of Defendants' equitable defenses.  *US Airways, Inc. v. McCutchen*, 663 F.3d 671

(3d Cir. 2011).

The United States Supreme Court granted US Airways' petition for writ of certiorari to

determine whether ERISA "authorizes courts to use equitable principles to rewrite contractual

language and refuse to order participants to reimburse their plan for benefits, even where the

Plan's terms give it an absolute right to reimbursement." Defendants' Appendix ("Def. Appdx."),

Ex. K.   The Supreme Court remanded this case holding as follows:

> First, in an action brought under §502(a)(3), based on an equitable lien by agreement, the  terms of the ERISA plan govern. Neither general principles of unjust enrichment nor specific doctrines reflecting those principles—such as the double-recovery or common-fund rules—can override the applicable contract. We therefore reject the Third Circuit's decision. But second, the common-fund rule informs interpretation of US Airways' reimbursement provision. Because that term does not advert to the costs of recovery, it is properly read to retain the common-fund doctrine. We therefore also disagree with the District Court's decision. In light of these rulings, we vacate the judgment below and remand the case for further proceedings consistent with this opinion.

*US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1551 (U.S. 2013).

This Court then granted Defendants leave to file an Amended Answer, including

amended affirmative defenses and an amended counterclaim. In the Counterclaim, Defendants

assert claims for  (1) Declaratory/Injunctive Relief under §502(a)(1)(B) and §502(a)(3) of

ERISA seeking (i) a declaration that, under the terms of the Plan, US Airways has no rights to

subrogation and/or reimbursement from either the third-party or underinsured motorist

settlements; (ii) an injunction enjoining US Airways from continuing to pursue its present claim

for subrogation and/or reimbursement; and (iii) to obtain other appropriate equitable relief; (2)

Breach of Fiduciary Duty and Statutory Violations under §502(a)(3) of ERISA; (3) Equitable

Estoppel under §502(a)(3) of ERISA; and (4) Penalties under §502(c)(1) of ERISA.  Following a

period of discovery, the parties have filed cross-motions for summary judgment, as well as

responses and briefs in support, and the matters are now before the Court.


## II.    STATEMENT OF THE CASE

The facts of this case are familiar to the parties and are undisputed.  On January 24, 2007,

2

McCutchen sustained multiple injuries in an automobile accident (the "Accident").  At the time

of the accident, McCutchen was an employee of US Airways, and a beneficiary under the Plan

which provided medical expense benefits to its participants. The Plan paid accident-related

medical expenses on behalf of McCutchen in the amount of $66,865.82.

Attorney Jon R. Perry and the law firm of Rosen, Louik and Perry, PC were retained by

the McCutchens to pursue claims related to the accident.   McCutchen's claims were eventually

settled for $10,000.00 from the driver whose vehicle struck McCutchen's, and $100,000.00 in

underinsured motorist benefits (the "UIM Claim"), the limits of the policy, under McCutchen's

automobile insurance policy.

US Airways filed this lawsuit seeking reimbursement, asserting it was entitled to

recovery based upon provisions of the Plan's SPD, portions of which were attached to the

Complaint. In its Complaint, US Airways alleged that the SPD provided that the Plan had

"subrogation and reimbursement rights to recover benefits  . . . for claims incurred 'as a result of

negligence, willful misconduct, or other actions of a third party.'" Complaint ¶ 8.  Specifically,

the SPD stated as follows:

> The purpose of the Plan is to provide coverage for qualified expenses that are not
> covered by a third party. If the Plan pays benefits for any claim you incur as the
> result of negligence, willful misconduct, or other actions of a third party, the Plan
> will be subrogated to all your rights of recovery. You will be required to
> reimburse the Plan for amounts paid for claims out of any monies recovered from
> a third party, including, but not limited to, your own insurance company as the
> result of judgment, settlement, or otherwise. In addition, you will be required to
> assist the administrator of the Plan in enforcing these rights and may not negotiate
> any agreements with a third party that would undermine the subrogation rights of
> the Plan.

*See* Complaint, Exhibit A.  Based on the language of the SPD, this Court granted US Airway's

summary judgment motion and held that US Airways was entitled to reimbursement in the

amount of $66,865.92. Defendants' Concise Statement of Undisputed Material Facts ("Def.

CSUMF") ¶ 26; Plaintiff's Concise Statement of Undisputed Material Facts ("Pl. CSUMF") ¶ 59.

Defendants filed a timely appeal of the Court's summary judgment order and opinion with the United States Court of Appeals for the Third Circuit. Pl. CSUMF ¶ 62.  The Third Circuit vacated this Court's summary judgment order, agreeing with Defendants' arguments that equitable principles, particularly unjust enrichment, allowed the court to depart from the SPD's language to fashion "appropriate" relief under Section 502(a)(3) of ERISA. Pl. CSUMF ¶¶ 68 & 69.

The United States Supreme Court granted US Airways' Petition for Writ of Certiorari. Def. CSUMF ¶ 30. Following a pre-argument meeting with counsel for both parties and representatives of the Department of Labor and the Office of the Solicitor General of the United States, counsel for US Airways produced the official Plan documents to the Solicitor General and RL&P. Def. CSUMF ¶ 32. Contrary to the SPD, Section 4.6 of the Plan provides:

**4.6 Subrogation**

Subject to any provisions in any contract referred to in Section 4.2 which specifically provide to the contrary, the Plan shall have the following rights:

(a) If the benefits are paid or payable by this Plan as the result of an action of a third party, this Plan shall be subrogated to all rights of recovery of any Participant under this Plan in respect to such action. The Participant shall execute and deliver such instruments and papers as may be required and whatever else is needed to secure such rights. Participants receiving benefits under this Plan are obligated to avoid doing anything that would prejudice the Plan's rights of recovery.

(b) If a suit is filed, the Plan may cause to be recorded a notice of payment of benefits, and such will constitute a lien on any judgment recovered.

(c) If a Participant to whom benefits are paid or payable under this plan fails to bring suit promptly against a third party, the Plan may institute suit against such third party in its own name or in the name of such Participant, and the Plan shall be entitled to retain from any judgment the amount of benefits paid

4

> or to be paid to such Participant together with all court costs and attorney fees.
> The remainder of any recovery shall be paid to such Participant or other
> persons as the court directs.

Def. CSUMF ¶ 33. The language of the Plan document contains a right of subrogation, however,

unlike the SPD it does not contain reimbursement language, nor does it entitle US Airways to

reimbursement from a participant's insurance company. The Supreme Court refused to address

the discrepancy between the subrogation language of the Plan and the

subrogation/reimbursement language of the SPD, and as noted above, reversed the Third Circuit

and remanded the matter to this Court. Def. CSUMF ¶ 37.


### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall

be granted when there are no genuine issues of material fact in dispute and the movant is entitled

to judgment as a matter of law. To support denial of summary judgment, an issue of fact in

dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could

base a verdict for the non-moving party and one which is essential to establishing the claim.

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary

judgment, the court is not permitted to weigh the evidence or to make credibility determinations,

but is limited to deciding whether there are any disputed issues and, if there are, whether they are

both genuine and material. *Id.* The court's consideration of the facts must be in the light most

favorable to the party opposing summary judgment and all reasonable inferences from the facts

must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West*

*Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358,

361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).  Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

These rules apply with equal force to cross-motions for summary judgment. *See Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). When confronted with cross-motions for summary judgment, as in this case, the Court considers each motion separately. *See Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 150 (3d Cir. 1993) (noting that concessions made for purposes of one party's summary judgment motion do not carry over into the court's separate consideration of opposing party's motion).

## IV.   DISCUSSION

### A.   Law of the Case and Waiver

As an initial matter, US Airways argues that McCutchen's claims in this Court are barred by the doctrines of waiver and law of the case. Specifically, US Airways contends that the

Supreme Court expressly found that the parties treated the SPD as controlling, and that any

arguments to the contrary, including any stemming from an alleged "conflict" between

the SPD and the Plan, had been waived. *US Airways, Inc. v. McCutchen*, 133 S. Ct. at 1543 n. 1.

The Supreme Court, however, did not specifically rule that the issue was waived.  The

Court expressly stated:

> We have made clear that the statements in a summary plan description
> "communicat[e] with beneficiaries about the plan, but . . . do not themselves
> constitute the terms of the plan.". . . Nonetheless, the parties litigated this case,
> and both lower courts decided it, based solely on the language quoted above. . .
> Only in this Court, in response to a request from the Solicitor General, did the
> plan itself come to light. . . **That is too late to affect what happens here**.
> Because everyone in this case has treated the language from the summary
> description as though it came from the plan, we do so as well.

*Id.* (Emphasis added).  The Court then remanded the case holding:

> First, in an action brought under §502(a)(3), based on an equitable lien by
> agreement, the  terms of the ERISA plan govern. **Neither general principles of
> unjust enrichment nor specific doctrines reflecting those principles—such as
> the double-recovery or common-fund rules—can override the applicable
> contract.** We therefore reject the Third Circuit's decision. But **second, the
> common-fund rule informs interpretation of US Airways' reimbursement
> provision.** Because that term does not advert to the costs of recovery, it is
> properly read to retain the common-fund doctrine. We therefore also disagree
> with the District Court's decision. In light of these rulings, we vacate the
> judgment below and **remand the case for further proceedings consistent with
> this opinion.**

*Id.* at 1551 (Emphasis added).  It is incumbent upon this Court, then to determine the contract

"applicable" the claims asserted by US Airways. Before this Court can interpret US Airway's

"reimbursement provision," it must determine if such provision is, in fact, part of the Plan.

In its Memorandum Opinion granting US Airways initial motion for summary judgment

this Court stated:

> In reviewing US Airways' interpretation of the Plan, the Court must first
> determine whether the terms of the plan document are ambiguous. . . The
> determination of whether terms in an ERISA plan document are ambiguous is a

> question of law. . . . Terms are considered ambiguous if they are subject to
> reasonable alternative interpretations. . . .  In determining whether terms of the
> Plan are ambiguous, the Court must look to the plain language of the documents.

*See* Memorandum Opinion, August 30, 2010, pp. 5-6. Unfortunately, the Court did not have

access to the actual Plan document at that time. This Court was admittedly "troubled" by US

Airways' untimely production of the Plan documents, as well as its contention that Defendants

failed to request the Plan document, and in its discretion, allowed Defendants to amend their

Answer to place the perceived conflict between the Plan and the SPD at issue. Fairness to all

parties now dictates that all the relevant instruments upon which US Airways' claims are based,

be properly laid before the Court for interpretation.  If the "US Airways' reimbursement

provision" is part of the Plan, this Court will interpret such provision consistent with the

Supreme Court's direction regarding the common-fund rule.

　　　　US Airways further argues that Defendants waived the issue because "Defendants (1)

never actually requested a copy of the Plan Document; (2) never moved to extend the discovery

deadline to request it; (3) never asserted Plaintiff's discovery responses were insufficient; and (4)

never claimed they needed a copy of the Plan Document in order to defend the litigation." Pl.

Brief in Support p. 23.  In conjunction with Defendants' 30(b)(6) Notice of Deposition, the

Defendants requested "All copies of **the Plan and the SPD that included changes [to the**

**language and/or terms of the [Plan] and the Plan's [SPD] pertaining to the Plan's rights of**

**subrogation and reimbursement** for benefits paid based upon claims paid as a result

negligence, willful misconduct, or actions of a third party]." Pl. CSUMF ¶ 41 (Emphasis added);

Amended Answer Ex. 5.  Such language certainly can be interpreted as requesting only copies

that included "changes" to the Plan and/or SPD regarding subrogation and/or reimbursement.

However, considering that the language in the SPD relied upon by US Airways in its claims for

8

reimbursement from all monies recovered, including from McCutchen's insurance company, is not reflected in the Plan's subrogation provision, the language of the Plan document must certainly be considered "changes [to the language and/or terms of the [Plan] and the Plan's [SPD] pertaining to the Plan's rights of subrogation and reimbursement."[1] Despite such express language, however, US Airway's counsel contends "counsel interpreted the request as concerning the SPD only . . ." Pl. CSUMF ¶ 42.

Despite such contention, the records before this Court, the Third Circuit and the United States Supreme are replete with representations from US Airways regarding the Plan's express provision regarding its right to reimbursement.  For example, in its brief in support of Motion for a Protective Order with regard to Defendants' 30(b)(6) Notice of Deposition, US Airways stated: "There is no question that the Plan documents expressly and unambiguously provide for Plaintiff's right to reimbursement from Defendants," and further argued that such information sought by Defendants was "wholly irrelevant" to US Airways' claims. Def. Appdx. Ex. H, pp. 003-004. In moving for summary judgment, US Airways stated it was seeking "to enforce the subrogation/reimbursement provision of the Plan," and that the Plan "provides that reimbursement 'for amounts paid for claims' is required. . ." Def. Appdx. Ex. I, pp. 001 & 008. In its Counter Statement of the Issues before the Third Circuit, US Airways stated:

> Whether the district court properly granted summary judgment in favor of [US Airways] . . .on its claim . . . for appropriate equitable relief to enforce the clear and unambiguous abrogation/reimbursement provisions of the Plan.

Def. Appdx. Ex. J, p. 002.  US Airways made similar statements regarding the Plan's reimbursement provision or its absolute right to reimbursement under the express terms of the

---

[1]   US Airways also ignores the June 26, 2007, request made by RL&P to Ingenix Subrogation Services, who was retained by US Airways to pursue recovery of the benefit payments the Plan made to McCutchen, requesting "a complete copy of the plan or trust document or summary description." Def. Appdx. Ex. C, p. 005.

Plan in documents placed before the United States Supreme Court. *See* Def. Appdx. Ex. K and Ex. M.  US Airways, as the party claiming reimbursement under the Plan, is taxed with the obligation of ensuring such representations are valid.

Moreover, the SPD specifically states:

> This SPD provides a comprehensive overview of the benefits available under the Plan. However, **it is only a summary**. Complete plan details are contained in a legal plan document. **If there is any difference between the information in this SPD and the legal plan document, the legal plan document will govern**. . .[2]

> _____

> **Plan Document**

> This SPD is intended to help you understand the main features of the Plan. **It should not be considered a substitute for the Plan document**, which governs the operation of the Plan. That document sets forth all of the details and provisions concerning the Plan and is subject to amendment. If any questions arise that are not covered in this SPD or **if this SPD appears to conflict with the official Plan document, the text of the official Plan document will govern.**

Def. Appdx. Ex. E, pp. 002 & 004 (Emphasis added).  Pervasive through its argument on the motions currently before the Court, US Airways asserts that, under the controlling law at the time this action was filed, the SPD was the controlling document.  The express language of the SPD itself, however, belies such argument. US Airways, as fiduciary and administrator of the Plan, was in the best position to know the contents of its Plan documents[3]. Even a cursory review of the SPD should have prompted a comparison of the relevant provisions of the SPD and the Plan document with regard to US Airways' alleged right to reimbursement prior to filing an action against McCutchen. US Airways' attempts to defend, explain and/or excuse its position by

_____

[2]    This language of disclaimer was attached to US Airways' Complaint as Exhibit A.

[3]    The Court does not absolve Defendants of responsibility in this regard.  The pertinent language of disclaimer was attached to the Complaint. Defendants, as well, should have been on notice that the Plan document could affect McCutchen's litigation rights, and therefore, could have been more focused in their discovery requests.

pointing to the change in law affected by *Amara* utterly fails before this Court. US Airways' failings[4] are now an obligation of this Court.  Accordingly, the Court finds that the doctrines of waiver and law of the case do not bar McCutchen's claims in this instance.

        B.      The Plan and the SPD

McCutchen contends that there is no reimbursement language set forth in the Plan document. Section 4.6 of Plan sets forth US Airways' right to subrogation only. Subrogation "allows the carrier, once it has paid an insured's medical expenses, to recover directly from a third party responsible for the insured's injury." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 698 (2006).  Because the Plan document provides no right to reimbursement under the plan terms, McCutchen argues that he is entitled to summary judgment on US Airways' claim for reimbursement. US Airways argues that the language of the SPD is incorporated by the Plan and the reimbursement language of the SPD is therefore part of the Plan.

While the instant action was pending before the Third Circuit, the United States Supreme Court addressed the weight to be afforded to SPDs in evaluating claims under ERISA § 502(a)(1)(B). *See CIGNA Corp. v. Amara*, 563 U.S. 421 (2011). Here, US Airways makes its claim pursuant to § 502(a)(3) of ERISA, and the Supreme Court found: "in an action brought under § 502(a)(3) based on an equitable lien by agreement, the terms of the ERISA plan govern." *See US Airways, Inc. v. McCutchen*, 133 S. Ct. at 1551. In *Amara*, the Court found it improper to enforce the terms of the SPD over the plan language reasoning that the syntax of another section of ERISA, § 102(a), which obliges plan administrators to furnish SPDs and requires that participants and beneficiaries "be advised of their rights and obligations 'under the plan,'" suggests that the information about the Plan provided by SPDs "is not itself part of the plan."

---

[4]    Despite the disclaimer language of the SPD, Counsel for US Airways' admits that he did not even see the Plan document until 2012.

*CIGNA Corp. v. Amara*, 563 U.S. at 436. Since *Amara*, courts have agreed that summary plan provisions, including stipulations not present in the plan certificate, are unenforceable. *Strott v. Dimensional Inv., LLC*, 2015 U.S. Dist. LEXIS 36887, 21-22 (W.D. Pa. Mar. 23, 2015. *See also, Conn. Gen. Life Ins. v. Roseland Ambulatory Ctr. LLC*, 2013 U.S. Dist. LEXIS 136374 (D.N.J. Sept. 24, 2013) (finding that the terms of the SPD are not legally binding when the SPD conflicts or creates terms not present in the governing benefits plan); *Baker v. Pa. Econ. League, Inc. Ret. Income Plan*, 811 F. Supp. 2d 1136, 1142 (E.D. Pa. 2011) (provision added to retirement plan, which was never formally added as an amendment to the plan, was not considered by the court under a claim of denial of benefits because it was not a term of the Plan).

   In  determining whether SPD terms are enforceable, district courts in this Circuit have looked to whether the SPD provisions are labeled by the plan administrator as legally enforceable or are referred to in the plan certificate. *See, e, g*., *Strott v. Dimensional Inv., LLC*, 2015 U.S. Dist. LEXIS 36887 21-22; *Frey v. Herr Foods Inc. Employee Welfare Plan*, 2012 U.S. Dist. LEXIS 176505, at 9 (E.D. Pa. 2012) (terms in summary document could be given deference when provisions are specifically identified as legally binding or are incorporated into the plan); *Moran v. Life Ins. Co. of N. Am.*, 2014 U.S. Dist. LEXIS 119844, 21-22 (M.D. Pa. Aug. 27, 2014) (declining to enforce grant of discretion in SPD because neither SPD or any other Plan document stated that the terms of the SPD were integrated into the Plan); *Conn. Gen. Life Ins. v. Roseland Ambulatory Ctr. LLC*, 2013 U.S. Dist. LEXIS 136374 (D.N.J. Sept. 24, 2013) (finding that the terms of the SPD are not legally binding when the SPD conflicts or creates terms not present in the governing benefits plan); *Baker v. Pa. Econ. League, Inc. Ret. Income Plan*, 811 F. Supp. 2d 1136, 1142 (E.D. Pa. 2011) (provision added to retirement plan, which was never formally added as an amendment to the plan, was not considered by the court under a claim of

12

denial of benefits because it was not a term of the Plan). Similarly, courts in other districts courts

have agreed that summary plan provisions are unenforceable. *Kaufmann v. Prudential Ins. Co.*

*of Am.*, 840 F. Supp. 2d 495, 499 (D. N.H. 2012) (concluding that a summary plan document

cannot establish appeal procedures that are not contained within the plan document); *Merigan v.*

*Liberty Life Assurance Co. of Boston*, 826 F. Supp. 2d 388, 397 (D. Mass. 2011) (holding an

appeal deadline set forth in the summary plan document to be unenforceable).

Here, there is no language in the SPD that expressly labels its provisions legally

enforceable. To the contrary, the SPD expressly disclaims that its terms be given deference over

the terms of the Plan, stating:

> This SPD provides a comprehensive overview of the benefits available under the
> Plan. However, it is only a summary. Complete plan details are contained in a legal
> plan document. If there is any difference between the information in this SPD and the
> legal plan document, the legal plan document will govern. . .
> _____
>
> **Plan Document**
>
> This SPD is intended to help you understand the main features of the Plan. It
> should not be considered a substitute for the Plan document, which governs the
> operation of the Plan. That document sets forth all of the details and provisions
> concerning the Plan and is subject to amendment. If any questions arise that are
> not covered in this SPD or if this SPD appears to conflict with the official Plan
> document, the text of the official Plan document will govern.

Def. Appdx. Ex. E, pp. 002 & 004. US Airways argues, however, that the Plan fully integrates

the terms of the SPD.

Section 4.2 of the Plan document states:

> Benefits under the Plan shall be provided in accordance with the terms of the
> Program in which the Participant enrolls. The benefits under the medical,
> prescription drug, mental health, and chemical dependency, dental, and EAS
> programs are set forth in the Summary Plan Description for the Plan.

Def. Appdx. Ex. L at Third Amendment. The question for this Court is whether such language

fully integrates the language of the SPD into the Plan, or whether, based upon the plain

disclaimer language of the SPD, the Court must read the subrogation language of the Plan as governing the issue.

Despite US Airways' arguments to the contrary, this Court is not convinced that the language of Section 4.2 of the Plan is an actual integration clause that affects the legal status of the SPD.  In support of its contention that the language of Section 4.2 incorporates the SPD into the Plan, US Airways directs the Court to *Caesars Entm't Operating Co. v. Johnson*, 2015 U.S. Dist. LEXIS 30221 (W.D. Ky. Mar. 11, 2015).  The language in Caesars' Welfare Benefit Plan ("WBP") was more specific than the language of Section 4.2. Section 1.1 of Caesars' WBP, titled "Purpose" states: "[t]his Plan, including all benefits provided, summary plan descriptions and insurance policies which appear as attachments (Plan Benefits), is a single employer welfare benefit plan within the meaning of Section 3(1) of ERISA and for all purposes under ERISA." *Id.* at *19.  Further, under Article IV section 4.1, titled "Plan Benefits", Caesars' WBP explained that it "**incorporates by reference** the Plan Benefits and insurance policies and **the accompanying summary plan description and provides legally enforceable rights** to the Plan Benefits." *Id.* at *19-20 (Emphasis added).  The district court then found that the WBP incorporated the SPD. *Id.* at *21.  There is no such specific language of incorporation or integration in US Airways' Plan document, and to elevate the nebulous language of Section 4.2 to give the SPD preference over conflicting provisions of the Plan directly conflicts with the SPD's specific disclaimer provisions.

Notwithstanding the contested language of Section 4.2, the Court finds that the disclaimer language of the SPD controls the issue.  In *Cottillion v. United Ref. Co.*, 781 F.3d 47 (3d Cir. 2015), United argued that, pursuant to certain SPDs, actuarial adjustments were required under the Plans such that employees who took vested retirement benefits earlier than their normal

retirement date would only be entitled to actuarially reduced benefits. *Id.* at 59-60. The Plans, however, did not contemplate actuarial adjustment. *Id.* at 60.  The SPDs also expressly stated "[i]f the terms of the Plan document and the Trust agreement and of this summary are inconsistent, the terms of the Plan document and the Trust agreement will control." *Id.*  In rejecting United's argument, the Third Circuit held that when the SPD contains "this sort of a disclaimer and the Plan is more favorable to beneficiaries than the SPD, the Plan controls." *Id.* Prior to *Amare*, the Third Circuit similarly held that where an SPD contains specific language stating that "the official Plan documents . . . govern in all cases," the SPD "is not the Plan, and thus [is] not the authoritative source of plan terms." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 577 (3d Cir. Pa. 2006).

The plain language of the Plan gives US Airways subrogation[5] rights "to benefits [] paid or payable by this Plan as the result of an action of a third party." The SPD gives US Airways subrogation rights, but also requires McCutchen "to reimburse the Plan for amounts paid for claims out of any monies recovered from a third party, including, but not limited to, your own insurance company as the result of judgment, settlement, or otherwise."  Clearly, the Plan is more favorable to McCutchen in this instance because "third party" as set forth in Section 4.2(a) of the Plan[6] does not include McCutchen's "own insurance company." Nor does the Plan require reimbursement of any monies recovered from a third party . . . as the result of judgment, settlement, or otherwise." Therefore, the Court finds that the Plan document controls the issue

---

5    Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against a third party. *US Airways, Inc. v. McCutchen*, 133 S. Ct. at 1546 n.5 (Citations omitted).

6    There is no definition of "third party" in the Plan document, and the benefits paid to McCutchen resulted from the action of the driver of the vehicle involved in the January 24, 2007 accident.

regarding US Airways' right to subrogation in this matter.

Section 4.6(b) of the Plan states: "[i]f a suit is filed, the Plan may cause to be recorded a notice of payment of benefits, and such will constitute a lien on any judgment recovered." Def. CSUMF ¶ 33.  Although, it is unclear whether a law suit related to the accident was filed on behalf of McCutchen, it is admitted that RL&P was retained to pursue claims relating to the accident. Pl. CSUMF ¶ 7; Def. CSUMF ¶ 4.  It is also admitted that US Airways retained Ingenix Subrogation Services ("Ingenix") to pursue recovery of the benefit payments the Plan made to McCutchen, relating to the January 24, 2007 accident, and that on June 26, 2007, Ingenix placed Defendants on notice of a potential lien against any recovery McCutchen might have relating to the accident. Pl. CSUMF ¶¶ 8 & 9.

The January 24, 2007, accident occurred when a vehicle driven by Michelle Battisti ("Battisti") southbound on State Route 60 in Beaver County left the roadway, crossed the median, entered the northbound lane of travel, and struck McCutchen's vehicle. Def. Appdx. Ex. C, p. 001. Chelsea Roman ("Roman") an occupant of the Battisti vehicle was killed, and two other fellow occupants, John Filippi ("Filippi") and Jessica Saska ("Saska") suffered traumatic brain injuries. *Id.* at 002. Because Battisti had only $100,000 in total insurance coverage for the accident, it was proposed that the limited insurance proceeds be distributed as follows: (1) $35,000 to Roman's Estate; (2) $35,000 to Filippi, who, at the time of the proposal, had yet to regain consciousness; (3) $20,000 to Saska, and; (4) $10,000 to McCutchen. *Id.*

RL&P informed Ingenix of the settlement proposal, asked for approval of the settlement terms and requested that Ingenix waive the lien. *Id.*  Ingenix failed to respond, and McCutchen's claim against Battisti was settled for $10,000.00. *Id.* Because the Plan allows a lien against recovery for benefits paid or payable by the Plan as the result of Battisti's action, these

settlement funds are the only funds available for recovery by under the Plan.

   In this manner, we follow the Supreme Court's holding set forth above: "in an action brought under §502(a)(3) based on an equitable lien by agreement, the terms of the ERISA plan govern." *US Airways, Inc. v. McCutchen*, 133 S. Ct. at 1551. Under the clear language of the Plan, US Airways is entitled to a lien against McCutchen's recovery of $10,000.00 from Battisti for benefits paid under the Plan. US Airways has no right under the Plan, however, to a lien against McCutchen's recovery from his insurance company.

   With regard to the second part of the Supreme Court's holding, this Court must read the common-fund doctrine into the Plan's subrogation provision. *Id.* Under the common-fund doctrine "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* at 1550 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). "[I]f . . . injured persons could not charge legal costs against recoveries, people like [McCutchen] would in the future have every reason" to make different judgments about bringing suit, "throwing on plans the burden and expense of collection." *Id.* at 1551 (quoting *Blackburn v. Sundstrand Corp.*, 115 F. 3d 493, 496 (7th Cir. 1997)). Accordingly, McCutchen is entitled to deduct his proportional fees and expenses that resulted in the recovery of the $10,000.00.

   C.    US Airways' Failure to Produce Plan Documents Pursuant to 29 U.S.C. § 1024

   Defendants contend that US Airways violated ERISA by failing to produce the Plan documents as required under 29 U.S.C. § 1024(b)(4).   Section 1024(b)(4) requires an ERISA benefits plan administrator to furnish certain benefits-related documents to a plan participant upon written request. In relevant part, § 1024(b)(4) specifically states:

   The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest

17

> annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). ERISA's disclosure provisions "ensure that 'the individual participant knows exactly where he stands with respect to the plan.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989) (quoting H.R. Rep. No. 93-533, p. 11 (1973)).

Section 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1)[7], "imposes a statutory penalty of up to $100 a day on any plan administrator who fails to provide to a plan participant or beneficiary any information that is required by the subchapter of the statute." *Laughman v. Black & Veatch Corp.*, 2010 U.S. Dist. LEXIS 116394, 13-14 (M.D. Pa. Nov. 2, 2010) (citing *Kollman v. Hewitt Assocs., LLC.*, 487 F.3d 139, 143 (3d Cir. 2007)); *see also* 29 C.F.R. § 2575.502c-1 (increasing the civil penalty to a maximum of $110 a day). This penalty provision may be invoked to enforce the document production obligations imposed by § 1024(b)(4). *See Kollman v. Hewitt Assocs., LLC.*, 487 F.3d at 143. In order to establish a violation of § 1024(b)(4) and impose the statutory penalty of § 1132(c), McCutchen must establish: (1) that he "made a written request to the plan administrator" for § 1024(b)(4) documents; and (2) that "the administrator failed to respond within 30 days." *Id.* at 144.

Here, the request was made by McCutchen's attorney. The Third Circuit has recognized that a representation by an attorney that he is making a request on behalf of a participant or beneficiary triggers the duty to respond under § 1024(b)(4) when the administrator has no reason

---

[7]     Section 1132(c)(1) states, in pertinent part, that "[a]ny administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation . . . shall be treated as a separate violation." *See* 29 U.S.C. § 1132(c)(1)(B).

to question the attorney's authority. *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 77-78 (3rd Cir. 2001).   The issue however, is whether a discovery request in litigation and/or a request made upon an entity providing services to the plan, satisfy the requirements of § 1024(b)(4) that a "written request" be made to a "plan administrator."

Our discussion begins with the unequivocal holding by the Third Circuit that § 1132(c), as a penal statute, is to be strictly construed. *See e.g., Kollman v. Hewitt Assocs., LLC.*,, 487 F.3d at 144 (stating that "[b]ecause [§ 1132] is a penal statute, our  holdings regarding the scope of that provision are impelled by the rule of lenity in the construction of penal provisions.") (citations omitted); *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F. 3d 1491, 1505 (3d Cir. 1994) (stating that "statutory penalty provisions are construed strictly" and "courts have taken this approach in applying penalty provisions of ERISA.") (citations omitted).  Because the penalty provision may be invoked to enforce the document production obligations imposed by § 1024(b)(4), the Court must strictly construe § 1024(b)(4) as well.

Consistent with the terms of these statutory provisions, courts have held that liability under § 1132(c)(1) is confined to the plan administrator and have rejected the contention that other parties can be held liable for the failure to supply participants with the plan documents they seek. *Mondry v. Am. Family Mut. Ins. Co*., 557 F.3d 781, 794 (7th Cir. 2009); *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1149 (7th Cir. 1998); *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 843-44 (6th Cir. 2007); *Ross v. Rail Car Am. Group Disability Income Plan*, 285 F.3d 735, 743-44 (8th Cir. 2002); *Lee v. Burkhart*, 991 F.2d 1004, 1010 (2d Cir. 1993); *McKinsey v. Sentry Ins.*, 986 F.2d 401, 403-05 (10th Cir. 1993). *See also Malishka v. MetLife*, 2015 U.S. App. LEXIS 22487, *9 (3d Cir. Pa. Dec. 23, 2015) ("[O]nly the Plan Administrator can be liable for statutory penalties for failing to provide the Plan Documents.").

Defendants' request for "a complete copy of the plan or trust document or summary description," made to Ingenix in June of 2007, does not satisfy the requirement under § 1024(b)(4) that a such request be made to a "plan administrator."

Defendants' requests for certain Plan and SBD documents made in conjunction with its 30(b)(6) Notice of Deposition also fail to trigger that liability under §§ 1024(b)(4) and 1132(c)(1)Section 1132(c). "[R]equests for plan documents made pursuant to the Rules of Civil Procedure in the course of pre-trial discovery do not trigger the application of §1132(c)." *Hughes v. Nat. Res. Consultants*, 77 Fed. App'x. 973, 974 (9th Cir. 2003); *see also Harrell v. CNA Ins. Cos.*, 2003 U.S. Dist. LEXIS 27377, at *15 (D.S.C. Jan. 14, 2003), *aff'd,* 86 Fed. App'x. 579, (4th Cir.  2004); *Middlebrooks v. St. Coletta of Greater Wash., Inc.*, 2010 U.S. Dist. LEXIS 92915, at *15  (E.D. Va. Sept. 7, 2010); *Kanoski v. Sterling Paper Co.*, 2014 U.S. Dist. LEXIS 49083 (S.D. Ohio Apr. 9, 2014).  Accordingly, Defendants' motion for summary judgment on its claim for penalties under §502(c)(1) of ERISA will be denied and US Airways, motion on such claim will be granted.

> D.   Breach of Fiduciary Duty and Equitable Estoppel

Defendants contend that US Airways breached its fiduciary duty by failing to provide McCutchen with the Plan document, and by affirmatively misrepresenting throughout this litigation that the Plan granted US Airways the right to seek reimbursement. "To allege and prove a breach of fiduciary duty for misrepresentations, [Defendants] must establish each of the following elements: (1) [US Airways'] status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of [US Airways]; (3) the materiality of that misrepresentation; and (4) detrimental reliance by [McCutchen] on the misrepresentation." *Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 384 (3d Cir. 2003).

ERISA requires a plaintiff to show that the fiduciary's breach of its duty was a proximate cause of plaintiff's injury. *See Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 424 (3d Cir. 2013). Moreover, an alleged misrepresented fact about the terms of the plan is material if "there is a substantial likelihood that it would mislead a reasonable employee in making a decision regarding his benefits under the ERISA plan." *Daniels v. Thomas Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001).

Defendants essentially contend that had McCutchen known the terms of the Plan, he would have likely challenged US Airways' claim that the Plan gives it a right to reimbursement long ago, possibly preventing years of needless and costly litigation, as well as delaying his use of the recovered funds. The misrepresentations relied upon, however, were not directed to any plan participants and/or beneficiaries, but were instead made in the course of pending litigation to this Court and the appellate courts that followed. There was no likelihood, therefore, that the representations, or positions taken in this litigation, would mislead McCutchen in "making a decision regarding his benefits under the ERISA plan."

Moreover, the Court's decision in Subsection B above was not based upon the subrogation versus reimbursement issue, but was based upon the Plan's failure to give US Airways any right to affect a lien against a participant's recovery from his or her insurance company. Whether the Plan was entitled to create "a lien" on any recovery, or was entitled to "reimbursement" from such recovery has no difference in effect. In either case, the Plan is entitled to compensation for benefits paid to a participant as a result of the actions of a third party.

This Court finds that if there was an intentional misrepresentation in this instance, such misrepresentation was not material. Defendants' claim for breach of fiduciary duty fails as a

result.

Defendants' Counterclaim also includes a claim based upon equitable estoppel.   An

ERISA plaintiff establishes a claim for equitable estoppel if he can show (1) that the fiduciary

made "a material representation, (2) reasonable and detrimental reliance upon the representation,

and (3) extraordinary circumstances." *Burstein v. Ret. Account Plan for Emps. of Allegheny

Health Educ. & Research Found.*, 334 F.3d at 383.  Because the Court finds that Defendants can

establish neither a material misrepresentation nor detrimental reliance, this claim fails as well.


## V.    CONCLUSION

Based on the forgoing, US Airways' motion for summary judgment will be denied to the

extent it claims entitlement to an equitable lien for benefits paid under the Plan against

McCutchen's recovery from his insurance company. US Airways' motion for summary judgment

will be granted to the extent it is entitled to an equitable lien for benefits paid under the Plan

against McCutchen's recovery of $10,000.00 from Battisti. Such lien, however, is subject to the

common-fund doctrine, allowing McCutchen to deduct the proportional fees and expenses that

resulted in the recovery.  US Airways' motion for summary judgment will be also granted in all

other aspects. Defendants' motion for summary judgment will be granted to the extent US

Airways has no right under the Plan to a lien against McCutchen's recovery from his insurance

company. Defendants' motion for summary judgment will be denied in all other aspects. An

appropriate Order follows.

Cercone, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **US AIRWAYS, INC**.  in its capacity as | ) |
| Fiduciary and Plan Administrators | ) |
| of the US Airways, Inc. Employee | ) |
| Benefits Plan, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )      2:08cv1593 |
| | )      **Electronic Filing** |
| **JANET MCCUTCHEN**, Executrix of the | ) |
| Estate of James E. McCutchen, and | ) |
| **ROSEN, LOUIK & PERRY, P.C**., | ) |
| | ) |
| Defendants. | ) |

**ORDER OF COURT**

AND NOW, this 16th day of March, 2016, upon consideration of the Cross-Motions for

Summary Judgment filed on behalf of the parties, the responses thereto, and the briefs and

appendices filed in support thereof, in accordance with the Memorandum Opinion filed herewith,

IT IS HEREBY ORDERED that the Motion for Summary Judgment (**Document No. 88**)

filed on behalf of US Airways, Inc. is granted in part and denied in part.  The motion is **DENIED**

to the extent it claims entitlement to an equitable lien for benefits paid under the Plan against

McCutchen's recovery from his insurance company. The motion is **GRANTED** to the extent US

Airways claims entitlement to an equitable lien for benefits paid under the Plan against

McCutchen's recovery of $10,000.00 from Ms. Battisti.  Such lien is subject to the common-fund

doctrine, allowing Defendants to deduct the proportional fees and expenses that resulted in the

recovery.  US Airways' motion for summary judgment will be also **GRANTED** in all other

aspects.

Defendants' Motion for Summary Judgment (**Document No. 91**) is granted in part and

denied in part.  The motion is **GRANTED** to the extent US Airways claims an entitlement under

23

the Plan to a lien against McCutchen's recovery from his insurance company. Defendants'

motion is **DENIED** in all other aspects.

 IT IS FURTHER ORDERED that within fourteen (14) days from the date of this Order

Defendants shall file a schedule of fees and expenses related only to its recovery from Ms.

Battisti.  US Airways shall respond thereto within fourteen (14) days thereafter.

s/ David Stewart Cercone<br/>David Stewart Cercone,<br/>United States District Judge

cc: Shannon H. Paliotta, Esquire
  Noah G. Lipschultz, Esquire
  Jon R. Perry, Esquire
  Tybe A. Brett, Esquire
  Matthew W.H. Wessler, Esquire

 (*Via CM/ECF Electronic Mail*)